## Case No. 3,568.

### DANIELS et al. v. TARBOX.

[9 Blatchf. 176.] [1]

Circuit Court, N. D. New York.  Oct. 10, 1871.

INTERNAL REVENUE — SUSPENSION OF DISTILLERY —REGULARITY AND COMPLETENESS — IRREGULAR NOTICE.

1. Under section 22 of the internal revenue act of July 20, 1868 (15 Stat. 134), a regular suspension of work by a distiller relieves him from assessment for taxation during the interval between the time he so regularly suspends work, and the time he actually resumes work, whether the resumption is regular, according to that section, or not.

[Cited in U. S. v. Black, Case No. 14,600.]

2. If he resumes work without previously complying with the provisions of that section in regard to resumption, he is liable to the forfeitures and punishment provided by that section; but the regularity of the suspension does not depend upon the regularity of the resumption.

3. Having mash or wort on the premises during the period of suspension, does not make the distiller liable to assessment for tax during such period.

4. A notice in writing of an intention to suspend work, under that section, was addressed to the assessor, instead of the assistant assessor, but was written in the office of the assistant assessor, and came to his hands, and contained the information required by the statute, and was acted upon by the assistant assessor. Held, that it was no objection to the regularity of the notice that it was addressed to the assessor.

5. A non-compliance with the statute in regard to one interval of suspension, cannot affect the question of the regularity of another suspension.

6. Where it was impossible to lock the door of the furnace of the still, and impossible to make a fire in the furnace, and the assistant assessor attended during the interval of suspension, and saw that no work of distilling was done, held, that the right of the distiller to be treated as having duly suspended work, was not affected by the omission of the assistant assessor to

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

comply with the statute by locking the door of the furnace.

7. Such right was not affected by the omission of the assessor to comply with the statute by reporting the suspension, and the action of the assistant assessor thereon, to the commissioner of internal revenue.

This was an action [by Samuel R. Daniels and Selden W. Lackor] against [Henry F. Tarbox] a collector of internal revenue, to recover back money paid as an internal revenue tax upon the plaintiffs, as distillers, under the name and firm of S. W. Lackor & Co.

L. F. & G. W. Bowen, for plaintiffs.
Richard Crowley, Dist. Atty., for defendant.

WOODRUFF, Circuit Judge. Several questions were raised on this trial, which, in the view I take of the single question hereafter considered, it will be unnecessary to decide. Whether, under the provisions of section 20 of the act of July 20, 1868 (15 Stat. 133), imposing taxes on distilled spirits and tobacco, and for other purposes, distillers are liable to be assessed upon eighty per cent. of the producing capacity of their distillery, although the actual production is far less—whether, when distillers make a true return, in the form and containing all the particulars required by law, and have been assessed in due form, and have paid the tax assessed, the United States have any remedy in the nature of an appeal from the act of the assessors—whether, where the assessors are deemed by the commissioner of internal revenue to have erred in the assessments, he can direct a reassessment and the collection of additional taxes, based upon the same facts and no other, or whether the assessor is responsible to the government for his own failure to assess and collect the just amount due by the distiller upon a true assessment, and, as bearing on this question, whether the 20th section of the act of June 30, 1864 [13 Stat. 229], as amended by the 9th section of the act of July 13, 1866 (14 Stat. 103), authorizing a reassessment in certain cases, has any application to a case in which the return of the party to the assessor contains truly every fact which it is his duty to return, or which is material to a correct assessment—it will not be material to discuss. The single question, whether the plaintiffs were liable to be assessed eighty per cent. on the capacity of their distillery, during eight days in the months of September and October, 1868, during which their distillery was not run at all, will, if decided in the negative, dispose of this case.

Assuming, therefore, for the purposes of this case, that the assessment, when legally made, should never be for a less quantity of spirits than eighty per cent. per diem of the whole capacity of the distillery, the period at which the assessment shall commence, and the time when the estimate may be suspended, and the day on which it shall cease, are vital to the ascertainment of the tax to which

the distiller is liable. On that subject, section 22 of the act of July 20, 1868. above referred to, provides, "that every distiller, at the hour of twelve, meridian, on the third day after that on which his bond shall have been approved by the assessor, shall be deemed to have commenced, and thereafter to be continuously engaged in, the production of distilled spirits in his distillery, except in the intervals when he shall have suspended work, as hereinafter authorized or provided. Any distiller, desiring to suspend work in his distillery, may give notice in writing to the assistant assessor of his division, stating when he will suspend work; and, on the day mentioned in said notice, said assistant assessor shall, at the expense of the distiller, proceed to fasten securely the door of every furnace of every still or boiler in said distillery, by locks and otherwise, and shall adopt such other means as the commissioner of internal revenue shall prescribe, to prevent the lighting of any fire in such furnace, or under such stills or boilers. The locks and seals, and other materials required for such purpose, shall be furnished to the assessor of the district by the commissioner of internal revenue, to be duly accounted for by said assessor. Such notice by any distiller, and the action taken by the assistant assessor in pursuance thereof, shall be immediately reported to the assessor of the district, and by him transmitted to the commissioner of internal revenue. No distiller, after having given such notice, shall, after the time stated therein, carry on the business of a distiller on said premises, until he shall have given another notice in writing to said assessor, stating the time when he will resume work; and, at the time so stated for resuming work, the assistant assessor shall attend at the distillery, to remove said locks and other fastenings; and thereupon, and not before, work may be resumed in said distillery, which fact shall be immediately reported to the assessor of the district, and by him transmitted to the commissioner of internal revenue. Any distiller, after the time fixed in said notice declaring his intention to suspend work, who shall carry on the business of a distillery on said premises, or shall have mash, wort, or beer in his distillery, or on any premises connected therewith, or who shall have in his possession, or under his control, any mash, wort or beer, with intent to distil the same on said premises, shall incur the forfeitures, and be subject to the same punishment as provided for persons who carry on the business of a distiller without having paid the special tax."

The proof shows, that the plaintiffs, after commencing the business of distilling, on four different occasions desired to suspend work, and gave notice of their intention to do so, and actually suspended, in precise accordance with the terms of their notice. The cause of suspension on three of these occasions was the need of repairs or alterations in their fix-

tures. These suspensions were September 16th, one day; September 22d and 23d, two days; October 1st, one day; and from October 7th to October 12th, (the 11th being Sunday,) four days, these being the eight days for which the tax was nevertheless exacted, to compel the repayment of which this action is brought. The notices of the intended suspension given by the plaintiffs were in form addressed to the assessor of the district. The assistant assessor of the division in which the distillery was included, occupied the same office with the assessor of the district, both he and the assessor being in the same apartment. Such assistant assessor was present when most if not all of the notices were drawn and signed. One of them he himself presented to one of the plaintiffs, and received the signature of the latter thereto, and he had actual knowledge of each of the notices when given. It was the duty of the assistant assessor to be at the distillery every day, and he was there each day of the suspension. On the days during which work was suspended in October, the assistant assessor locked the furnace, as required by the act. On the three days of the suspension in September, he did not lock the door of the furnace, and the reason for not doing so was, (as he explicitly testifies,) that the plaintiffs were repairing it and it could not be locked. This, certainly, was so on one of those occasions, and the reason it was not locked on the other occasion was, either that the repairing rendered it impossible, or that it was in such a condition that no fire could be made in it; and nothing was or could be distilled on either day of suspension in September or October, in the then condition of the distillery. It does not appear that any notice of either suspension, or of the action of the assistant assessor thereupon, was reported by the assessor or of the district to the commissioner of internal revenue. The plaintiffs gave no subsequent notice in writing to the assessor, stating the time when they would resume work. They embodied in the one notice given in each case, a statement of the number of days which they would suspend and of the day they would resume; but no report of that fact was made by the assessor to the commissioner of internal revenue.

It is proper to say, preliminarily, that this case in no wise depends upon the question whether one notice is sufficient to satisfy all the requirements of the law, so as to justify the plaintiffs in resuming work after a suspension. The section cited is reasonably explicit in requiring "another notice in writing to said assessor." But, whether these notices must be on separate papers, with separate address and signature, or may be embodied in one, is immaterial to the present case, for the reason, that the regularity of the suspension does not at all depend upon the regularity of the resumption. If the law was so far complied with that the plaintiffs were duly in suspension from work, that state of things continued until they resumed. If they resumed without previous compliance with the law relating to resumption, they became liable to the consequences prescribed specifically for that act, namely, they incurred the forfeitures, and became subject to the same punishment, provided for persons distilling without paying the special tax. The law excepts from the assessment for taxation on the production of the distillery, and on its capacity for production, the intervals when the distiller shall have suspended work, as authorized or provided. Whether he ever resumes or not, and whether he resumes lawfully or unlawfully, is immaterial for the purposes of assessment for those intervals. There is no connection between the two subjects. A regular suspension relieves him from assessment during the interval. An irregular resumption subjects him to forfeitures and punishment. The same observations are pertinent to the fact proved in this case, that, during the periods of suspension, the plaintiffs had mash or wort on the premises in the distillery, though without any intent to distil it. If they thereby exposed themselves to forfeiture or penalties, be it so. It is no where provided that that fact made them liable to assessment upon the producing capacity of the distillery. I do not intend, by this, to say that a suspension (which may often be the necessary result of causes they cannot control) while they have mash on hand, subjects them to forfeiture or penalty. I mean to say, that the regularity of the suspension does not depend at all on their having or not having it on hand. And yet it appears, by a letter produced on the trial, signed by the deputy commissioner, that the reason why he deemed the plaintiffs were liable to assessment for the eight days of actual suspension was, that the assistant assessor, in his certificate of the suspension, on file in his office, did not certify, that, when he placed the locks on the furnace doors, there was no mash, beer or wort on hand on the premises. This is, I think, a misconstruction of the act. If the plaintiffs were proceeded against for a forfeiture, or to enforce punishment, as provided in the concluding paragraph of the section, it would be material to consider, what having of mash, or wort, or beer in the distillery makes them liable, and, whether the intent or purpose thereof is material, may be then a very important inquiry. Here, I deem it wholly irrelevant. Again, it is proper to say, that this case does not require any decision of the question, what, as between the government and its officers, are the consequences of a neglect by the latter to comply with the requirements of the law prescribing their duty. The question, therefore, is reduced to this—Were the plaintiffs liable to assessment for the days of actual suspension, or were those days "intervals" when they had "suspended work," as in the act "authorized or provided?"

The act, in terms, authorizes any distiller

desiring to suspend work, to give notice in writing, stating when he will suspend, and provides that, having given such notice, he shall not, after the time stated therein, resume work, until he shall have given another notice in writing, stating the time when he will resume. The other objections claimed, on the trial, to affect the plaintiffs' position in this respect, rest on the sufficiency of their notice of an intention to suspend, the neglect of the assistant assessor to lock the doors of the furnace on the three days of suspension in September, and the want of proof that the assessor immediately reported the suspension, and the action of the assistant assessor thereupon, to the commissioner of internal revenue.

The only suggestion of defect in the notice is, that it contained an address to the assessor of the district. Surely, this objection has no merit. The notices came to the assistant assessor; they are in writing; they were written in his office. He, himself, presented one of them to one of the plaintiffs for signature. They contain, and they actually communicated to the assistant assessor, the precise information necessary to comply with the law. They were in due form to produce the effect designed, and he received them as notices, and acted thereupon; and it is a circumstance showing that no importance belongs to the mere fact that they contained an address to the assessor, that, when the law speaks of the notice of intent to resume, it terms it a notice to the assessor. The purpose and design of the requirement here was fully satisfied, and the objection is untenable.

The neglect of the assistant assessor to place locks on the door of the furnace during the three days of suspension in September, surely did not affect the regularity of the suspension of five days in October. Then the door was locked, so that this objection cannot be urged to defeat the claim of the plaintiffs here as to those five days. These intervals of suspension were distinct, and irregularity in some could not affect others.

But I am, also, of opinion, that there was no fault in the plaintiffs, affecting their liability to assessment, arising from the omission to lock the door of the furnace in September. The act should receive a sensible construction, if possible. The proof is, that the nature of the repairs rendered it impossible to lock the door, and impossible to make a fire in the furnace; and the assistant assessor attended and saw that no work of distilling was done. The law did not propose an impossibility; or, if it did, it is not the fault of the plaintiffs if the law prescribed to the assistant assessor a precaution impossible of application. It does not appear that the commissioner has prescribed any "other means" "to prevent the lighting of any fire in such furnace, or under such stills or boilers." When, therefore, the assistant assessor found locking the door impracticable, and the lighting of any fires impossible, and further interposed his personal presence to see to it that no distilling was done, and did see that no distilling was or could be done, I think the law was fully satisfied—certainly, so far as the plaintiffs' right to be treated as having duly suspended work is affected thereby. If, however, it can be successfully insisted that the assistant assessor ought to have actually devised some means of locking the door, and failed to do his duty in this respect, we are brought to the same question involved in the next objection, namely, that there is no proof that the suspension was reported to the commissioner; and that question is—Must the plaintiffs pay taxes according to the capacity of their distillery, because the officers of the government neglect their duty, and so long as such neglect continues? It seems to me that this point requires very little discussion. The duties imposed in this statute on the assessor and assistant assessor are directory merely. For the discharge of their duties they are responsible to the government. The plaintiffs have no control over them, and ought not to be affected by their acts or omissions, which they can neither guard against nor prevent. Suppose, for example, a distiller gives the required notice, and actually suspends in accordance with his expressed intention. What more can he do? The assistant assessor may wholly neglect or refuse to secure or lock the door of his furnace; and can it be claimed, that, for that reason, the distiller must continue to pay taxes, as in this case assessed, at over $300 per day? Such suspension may not always be for a few days only, but may be for a period which, if the neglect of the assistant assessor involved such a consequence, would result in the distiller's utter ruin. No such claim can be reasonably urged on behalf of the government, and such is not the meaning or effect of the law, neither in regard to the neglect of the assistant assessor, nor to the neglect of the assessor to make due and timely report to his superiors.

For these reasons, I think the tax imposed on the plaintiffs, for eighty per cent. of the capacity of their distillery, and the penalty exacted for its non-payment pending their appeal, amounting to $2,524.26, were illegally exacted from them by the defendant, as collector of internal revenue, and that they are entitled to recover the same, with interest from December 30th, 1869, when the same appears to have been paid, with costs.

DANIELS (UNITED STATES v.). See Case No. 14,916.

DANIELS (WARNER v.). See Case No. 17,181.

DANTZLER (UNITED STATES v.). See Case No. 14,917.